The principal events from which the inauguration of the present action has somewhat belatedly arisen are not in any material respect denied. They were ensuing occurrences of the period of chaotic desperation during which in the anxieties of bankers, decaying securities and wishful salvage were the predominant subjects of meditation. In the emergencies, rescue was sought on available terms however disappointing. Some banks obtained *Page 497 
refuge under the wing of a more robust institution, others were obliged to combine in a defensive alliance. In most exigencies action had to be prompt and swift; time-consuming formalities had to bow to the opportunities and expedients of the moment and the critical responsibilities of the situation had to be accepted by the chosen management of the institution.
Many of the more recent cases demonstrate how facile it now is to criticize the energetic and faithful navigators after the tempest has abated. In equity it is always judicious to measure and appraise the acts and transactions of parties and the alleged inadequacies in the reflection of the conditions then prevailing.
A concise narrative of the transactions with which we are at present concerned is embodied in the opinion rendered by former Judge Kays, hence a recitation of them need not be undertaken.3 N.J. Super. 299, 64 A.2d 914.
From the sources of information to be recognized on this appeal, it is disclosed that the officials of the West Bergen Trust Company were urgently apprehensive of an involuntary suspension of their business operations. Relief could be obtained by means of a merger with the Trust Company of New Jersey. Indeed, it was the merger that was to supply the alleviation and deliverance from the threatening suspension. Obviously the companionship between the loan or sale of the "unacceptable assets" and the merger was necessarily coincidental to the coalescence of the companies. Had such assets been sold instead of pledged there would be no surplus about which to quarrel. The West Bergen Trust Company duly resolved upon terms to transfer its entire cargo of resources to the Trust Company of New Jersey.
The appellants do not by their complaint seek to nullify the merger agreement, nor do they impugn the normal applicability and consequential effectiveness of the statute pursuant to which the merger was achieved. They fancy that the merger agreement ought to have reserved the unacceptable assets or any surplus derived from their liquidation for delivery or payment to thestockholders of the West Bergen Trust Company. *Page 498 
The agreement of merger contains no such reservation or exclusion and as composed, its lawful effect is precisely oppugnant to any such exception. Moreover the application for the loan and the accompanying note expressly refute any intention to bestow upon the stockholders of the West Bergen Trust Company the right to receive the surplus collateral or any excess proceeds.
It is also suggested that the possibility of the ultimate passage of any excess of the pledged collateral to the Trust Company of New Jersey was not within the contemplation of the parties to the contract of merger. Perhaps that assertion cannot be rejected as entirely incredible. Although provided for in the documents, the expectation that the loan would be fully paid, much less that there would be a surviving surplus, was at that time probably only within the range of the most fertile imagination. So, too, it may now be reasonably conjectured that an uncontemplated increase in value has since occurred with relation to other assets of the West Bergen Trust Company which were unquestionably intended to be transferred to the Trust Company of New Jersey.
By virtue of the merger the latter company absorbed "every right, privilege, interest or asset of conceivable value or benefit then existing which would inure to it (the former) under an unmerged existence." R.S. 17:4-80 et seq., N.J.S.A. Thus by the operation of the then existing law in pursuance of which the merger was intended to be effectuated, any right or interest, legal or equitable, in and to the unacceptable collateral or its redemption which "would inure" to the West Bergen Trust Company became vested in the Trust Company of New Jersey "fully and finally, and without any right of reversion * * *." R.S.
17:4-87, N.J.S.A.
The outcome is not inimical to the contract between the West Bergen Trust Company and the Federal Deposit Insurance Corporation which in toto consists of both the application for the loan and the note. Manifestly the proposed merger was the impending objective.
The contract of merger entered into by the two banking corporations remains unmodified and in complete force. It *Page 499 
has been acted upon for a relatively lengthy span of years. Its validity has been unmolested and its derivations have been accepted. The appellants are presumed to have known the law associated with such a contract. What they did not know or expect was that any material surplusage would fortuitously eventuate from the once welcome hypothecation of securities then so skinny. Normally contractual engagements are entered into with a view of present probabilities, not of future certainties.
It is not denied that the holders of the West Bergen stock received a consideration of 12,000 shares of the new common stock of the Trust Company of New Jersey in exchange for 8,000 shares of the common stock of their company. But it is now explained that in the light of the percolating surplus heretofore unanticipated, the consideration was insufficient. Suffice to reply that in the absence of some fraudulent ingredient, patent, presumptive or circumstantial, a bargain otherwise bona fide
will not be annulled merely because one party has subsequently and unexpectedly discovered some gold in the hills.
The conclusion is that the order here subjected to review should be affirmed.